Exhibit B

LEXSTAT 42 USC 11603

UNITED STATES CODE SERVICE
Copyright © 2007 Matthew Bender & Company, Inc.,
one of the LEXIS Publishing (TM) companies
All rights reserved

\*\*\* CURRENT THROUGH P.L. 110-19, APPROVED 4/23/2007 \*\*\*

TITLE 42. THE PUBLIC HEALTH AND WELFARE
CHAPTER 121. INTERNATIONAL CHILD ABDUCTION REMEDIES

**Go to Code Archive Directory for this Jurisdiction**

42 USCS § 11603

§ 11603. Judicial remedies

(a) Jurisdiction of the courts. The courts of the States and the United States district courts shall have concurrent original jurisdiction of actions arising under the Convention.

(b) Petitions. Any person seeking to initiate judicial proceedings under the Convention for the return of a child or for arrangements for organizing or securing the effective exercise of rights of access to a child may do so by commencing a civil action by filing a petition for the relief sought in any court which has jurisdiction of such action and which is authorized to exercise its jurisdiction in the place where the child is located at the time the petition is filed.

(c) Notice. Notice of an action brought under subsection (b) shall be given in accordance with the applicable law governing notice in interstate child custody proceedings.

(d) Determination of case. The court in which an action is brought under subsection (b) shall decide the case in accordance with the Convention.

(e) Burdens of proof.
    (1) A petitioner in an action brought under subsection (b) shall establish by a preponderance of the evidence--
        (A) in the case of an action for the return of a child, that the child has been wrongfully removed or retained within the meaning of the Convention; and
        (B) in the case of an action for arrangements for organizing or securing the effective exercise of rights of access, that the petitioner has such rights.
    (2) In the case of an action for the return of a child, a respondent who opposes the return of the child has the burden of establishing--
        (A) by clear and convincing evidence that one of the exceptions set forth in article 13b or 20 of the Convention applies; and
        (B) by a preponderance of the evidence that any other exception set forth in article 12 or 13 of the Convention applies.

(f) Application of the Convention. For purposes of any action brought under this Act--
    (1) the term "authorities", as used in article 15 of the Convention to refer to the authorities of the state of the habitual residence of a child, includes courts and appropriate government agencies;
    (2) the terms "wrongful removal or retention" and "wrongfully removed or retained", as used in the Convention,

  

include a removal or retention of a child before the entry of a custody order regarding that child; and
   (3) the term "commencement of proceedings", as used in article 12 of the Convention, means, with respect to the return of a child located in the United States, the filing of a petition in accordance with subsection (b) of this section.

(g) Full faith and credit. Full faith and credit shall be accorded by the courts of the States and the courts of the United States to the judgment of any other such court ordering or denying the return of a child, pursuant to the Convention, in an action brought under this Act.

(h) Remedies under the Convention not exclusive. The remedies established by the Convention and this Act shall be in addition to remedies available under other laws or international agreements.

**HISTORY:**
   (April 29, 1988, P.L. 100-300, § 4, 102 Stat. 438.)

### HISTORY; ANCILLARY LAWS AND DIRECTIVES

References in text:
   "This Act", referred to in this section, is Act April 29, 1988, P.L. 100-300, 102 Stat. 437, which generally appears as 42 USCS §§ 11601 et seq. For full classification of such Act, consult USCS Tables volumes.

**NOTES:**

Related Statutes & Rules:
   This section is referred to in 42 USCS §§ 11604, 11605, 11607.

Research Guide:

Federal Procedure:
   13A Fed Proc L Ed, Foreign Relations §§ 36:157, 163, 164, 166, 168.

Am Jur:
   1 Am Jur 2d, Abduction and Kidnapping §§ 21, 36.

Interpretive Notes and Decisions:
   1. Applicability 2. Right of custody 3. Child's habitual residence 4. Wrongful removal or retention of child 5. Exceptions to return requirement 6. --Child settled in new environment 7. --Grave risk of harm 8. --Maturity of child 9. Jurisdiction 10. Abstension 11. Notice and hearing 12. Fugitive disentitlement doctrine 13. Immunity 14. Sufficiency of evidence 15. Full faith and credit requirement 16. Appeal and review 17. Miscellaneous

   1. Applicability

  

Citizen of Bahrain's petition filed under 42 USCS § 11603(b) under International Child Abduction Remedies Act seeking return of his minor daughter residing with her U.S. citizen mother in Wyoming is dismissed where father has no rights under Hague Convention on Civil Aspects of International Child Abduction to seek redress for child who was habitual resident of Bahrain immediately before going to United States where Bahrain is nonsignatory or "noncontracting state" to Hague Convention. In re Mohsen (1989, DC Wyo) 715 F Supp 1063.

### 2. Right of custody

Rights of access do not constitute rights of custody within meaning of Hague Convention, even when coupled with "ne exeat" clause; therefore, district court lacked jurisdiction to order return of child removed in breach of petitioner's access rights rather than custodial rights. Croll v Croll (2000, CA2 NY) 229 F3d 133, cert den (2001) 534 US 949, 151 L Ed 2d 258, 122 S Ct 342 and (criticized in Furnes v Reeves (2004, CA11 Ga) 362 F3d 702, 17 FLW Fed C 285).

"Patria potestas," in Mexican law, implies unmarried father had "rights of custody" for purpose of asserting wrongful removal against unmarried mother under Convention. Whallon v Lynn (2000, CA1 Mass) 230 F3d 450.

Spanish father's right of access to children now living in Michigan will not be determined, where it is clear his ex-wife did not wrongfully remove children from Spain, because, while federal courts undoubtedly have jurisdiction under International Child Abduction Remedies Act (42 USCS §§ 11601 et seq.) to act in cases where children have been wrongfully removed by ordering their return to their country of habitual residence, access issues, which require court to weigh children's interests, parents' interests, and other familial considerations, are best left to state courts, which have both experience and resources to deal with this special area of law. Teijeiro Fernandez v Yeager (2000, WD Mich) 121 F Supp 2d 1118.

Fathers awarded "joint parental responsibility" by Australian courts, and whose exercise of parental rights had been sanctioned by Australian judicial decisions and agreements with mother, possessed "rights of custody," within meaning of 42 USCS § 11603, to determine if mother had wrongfully removed children from country. Norden-Powers v Beveridge (2000, ED NY) 125 F Supp 2d 634.

Father's removal of his children from Ireland, where he and his children lived for five years after his wife's death, was not wrongful under 42 USCS § 11603(b) where (1) children's mother had granted testamentary guardianship to children's maternal grandparents, but under Irish law, grandparents were required to obtain court order to maintain guardianship in face of father's objections, (2) grandparents never sought court order of guardianship, and (3) grandparents never had custody of children as that term was defined under Irish law because grandparents were not responsible for children's day-to-day care; thus, grandparents never had rights of custody necessary to obtain relief. Hanley v Roy (In re Roy) (2006, SD Fla) 432 F Supp 2d 1297, 19 FLW Fed D 621.

**Unpublished Opinions**

Unpublished: Denial of former husband's petition for return of children under Hague Convention on Civil Aspects of International Child Abduction, Oct. 25, 1980, art. 5, T.I.A.S. No. 11,670, 1343 U.N.T.S. 89 (reprinted in 51 Fed. Reg. 10494 (Mar. 26, 1986)), and 42 USCS §§ 11601-11611, was remanded because record before United States Court of Appeals for Fourth Circuit was unclear with regard to whether former husband had right of custody, which included right to determine children's place of residence, or right of access, which allowed him to take children for limited time to place other than children's habitual residence; it had to be determined on remand whether removal was wrongful. Katona v Kovacs (2005, CA4 NC) 148 Fed Appx 158.

### 3. Child's habitual residence

Child's "habitual residence" does not shift to United States when American mother assumes role of primary caretaker; "habitual residence" can be altered only by change in geography and passage of time, not by changes in parental affection and responsibility; change in geography must occur before removal of child. Friedrich v Friedrich

  

(1993, CA6 Ohio) 983 F2d 1396, 125 ALR Fed 703 (criticized in Mozes v Mozes (2001, CA9 Cal) 239 F3d 1067, 2001 CDOS 429, 2001 Daily Journal DAR 359).

Court will reject argument that 6-week old infant is dependent on mother for determination of its habitual residence; this would be inconsistent with Convention for it would reward abducting parent and create impermissible presumption that child's habitual residence is wherever mother happens to be. Nunez-Escudero v Tice-Menley (1995, CA8 Minn) 58 F3d 374.

Australia, rather than United States, was habitual residence of child where child moved with both parents from United States to Australia, where he was to live for foreseeable future at least, stayed there for nearly 6 months, significant period of time for 4-year old child, and where he attended pre-school. Feder v Evans-Feder (1995, CA3 Pa) 63 F3d 217, reh, en banc, den (1995, CA3) 1995 US App LEXIS 24323.

"Habitual residence" of parties' children for purposes of International Child Abduction Remedies Act, 42 USCS §§ 11601-11610 was United States because, with exception of 11 months that children lived in Israel, they lived their entire lives in United States, their time in Israel would have been shortened had mother been free to travel outside of Israel sooner, mother's residence in Israel was coerced, she moved to Israel to attempt to preserve her marriage but did not intend to make Israel family's habitual residence, and there were questions regarding family's intent to live in Israel permanently; furthermore, in January 2000, parties returned to Minnesota to complete bankruptcy proceedings, where they both stated under oath that their permanent address was Plymouth, Minnesota, and in April 2000 they filed joint United States income tax form for 1999, which listed their address as Plymouth, Minnesota. Silverman v Silverman (2002, CA8 Minn) 312 F3d 914, vacated, reh, en banc, gr (2003, CA8 Minn) 2003 US App LEXIS 2655.

Denial of father's petition for wrongful removal of his children under Hague Convention was affirmed because he failed to prove that children's prior U.S. habitual residence had been abandoned and new habitual residence in Mexico had been established. Ruiz v Tenorio (2004, CA11 Fla) 392 F3d 1247, 18 FLW Fed C 111.

Father's petition for return of his son under Hague Convention on Civil Aspects of International Child Abduction, implemented by International Child Abduction Remedies Act, 42 USCS § 11601 et seq., was remanded to district court to consider facts in light of legal standard set forth by appellate court for determining child's habitual residence in Hague Convention disputes under which court should inquire into shared intent of those entitled to fix child's residence, usually parents, at latest time that their intent was shared and should inquire whether evidence unequivocally points to conclusion that child has acclimatized to new location and, thus, has acquired new habitual residence, notwithstanding any conflict with parents' latest shared intent. Gitter v Gitter (2005, CA2) 396 F3d 124.

Mother's petition was properly granted requiring return of two children to Germany under Hague Convention on Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11,670, 1343 U.N.T.S. 49 (reprinted at 51 Fed. Reg. 10494 (Mar. 26, 1986)), and International Child Abduction Remedies Act, 42 USCS §§ 11601 et seq.; children's habitual residence before they were taken to U.S. by their father was Germany because parents had abandoned their prior residence in U.S. when they moved to Germany for indefinite duration; parents' joint actions in, inter alia, taking nearly all of their possessions to Germany and setting up new home there demonstrated that move was of settled nature, and it was not necessary for parents to have intended to permanently reside in Germany in order for them to have had shared intent to abandon their prior habitual residence. Koch v Koch (2006, CA7 Wis) 450 F3d 703.

Father shall pay for return of minor child to Germany with mother under 42 USCS §§ 11603 and 11607, where child was born and resided in Germany from April 1989 to May 1991, then lived in Kansas until April 1992, then returned with mother to Germany, where father visited in July 1992 and took child--without mother's permission--back to U.S., because father wrongfully removed daughter from her "habitual residence" and could not prove that mother acquiesced in his keeping her in U.S., despite some evidence to that effect. Levesque v Levesque (1993, DC Kan) 816 F Supp 662.

  

International Child Abduction Remedies Act, 42 USCS §§ 11601-11610, does not compel return of child to Germany, where German national (father) and American national (mother) were married in and lived in U.S., child was born in U.S., family traveled to Germany for visit, on round-trip tickets, father initially refused to allow mother and child to return to U.S., and then allowed them to return without him, because habitual residence of mother and child was in U.S., they remained in Germany only under duress, and father consented to child's return to U.S., although he later tried to defeat it in custody case. In re Ponath (1993, DC Utah) 829 F Supp 363.

German mother is denied return of 2-year-old son, where (1) illegitimate son was product of U.S. Army base romance, (2) couple agreed son would return to Massachusetts and live with father's parents while father found job, (3) son had become completely accustomed to life in this country with his father and grandparents after 8 months, but (4) mother wants him to return to Germany now that miscarriage and employment problems have cast shadow on relationship, because it simply defies common sense to suggest under these circumstances that child was "habitual" resident of Germany and wrongfully retained in U.S. under International Child Abduction Remedies Act (42 USCS §§ 11601 et seq.). Falls v Downie (1994, DC Mass) 871 F Supp 100.

Father's petition for return of children to Venezuela is granted under 42 USCS § 11603, where father's efforts to reconcile marriage immediately ceased once he learned his wife had filed for divorce in Florida, and it cannot be said that he acquiesced in moving children to Florida, because Venezuela was children's habitual residence, father was exercising custody rights, and mother wrongfully retained children in U.S. Pesin v Rodriguez (1999, SD Fla) 77 F Supp 2d 1277, app dismd (2001, CA11 Fla) 244 F3d 1250, 14 FLW Fed C 510.

Father's petition for return of his children to Australia under International Child Abduction Remedies Act (42 USCS §§ 11601 et seq.) is denied, where evidence shows family's furniture and personal belongings remained in U.S. during two 9-month stints in Australia, and that parents expected Australian stays to be only temporary, until father secured teaching position in U.S., because father has failed to show that Australia was habitual residence of children. Kanth v Kanth (1999, DC Utah) 79 F Supp 2d 1317, affd, motion gr, motion den (2000, CA10 Utah) 232 F3d 901, reported in full (2000, CA10 Utah) 2000 Colo J C A R 6073 and cert den (2001) 533 US 929, 150 L Ed 2d 718, 121 S Ct 2551, reh den (2001) 533 US 970, 150 L Ed 2d 794, 122 S Ct 12.

For purposes of Hague Convention on Civil Aspects of International Child Abduction, two children were "habitually resident" in U.S. where they entered U.S. at young age, resided continuously in U.S. for two and half years, and parents themselves, prior to their separation, had shown intent to remain indefinitely in U.S. by enrolling children in private schools and looking at purchasing home. Menechem v Frydman-Menachem (2003, DC Md) 240 F Supp 2d 437.

For purposes of Hague Convention on Civil Aspects of International Child Abduction, where father of two children sought to bring them back to Israel by arguing that Israel was their habitual residence even though children had lived in U.S. for two and half years, fact that children could hypothetically have become re-acclimated to Israel was irrelevant. Menechem v Frydman-Menachem (2003, DC Md) 240 F Supp 2d 437.

Where child was born and raised in Argentina, attended school in Argentina, and had majority of her extended family in Argentina, court found that child's habitual residence prior to alleged wrongful retention was Argentina; although child had spent some time in U.S., court would not find, based on unilateral actions of mother, that child's habitual residence had been changed. Cabrera v Lozano (In re Cabrera) (2004, SD Fla) 323 F Supp 2d 1303, 17 FLW Fed D 866.

Where child's habitual residence prior to alleged wrongful retention was Argentina, law of Argentina governed question of whether custody rights existed at time of retention. Cabrera v Lozano (In re Cabrera) (2004, SD Fla) 323 F Supp 2d 1303, 17 FLW Fed D 866.

Northern Ireland was children's place of habitual residence after parents sold their home and relocated there; during two years that they lived in Northern Ireland children became settled and acclimated to their new location, enrolled in





and attended schools, joined organized sports teams, participated in church activities, and engaged in other activities as residents of country would. McManus v McManus (2005, DC Mass) 354 F Supp 2d 62.

Father's petition against mother of his children under Hague Convention on Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11,670, 1343 U.N.T.S. 49, and International Child Abduction Remedies Act, 42 USCS § 11601 et seq., seeking order requiring that his three minor children be returned to Argentina for determination of custodial rights, was denied where: (1) parents began making plans to move to U.S. in late 2001 due to economic crisis in Argentina; (2) father removed children from their Argentine school even though new school year had just begun, and personally brought them to U.S.; and (3) by attending school, children had established routine and sense of environmental normalcy that would be expected of habitual resident. Silvestri v Oliva (2005, DC NJ) 403 F Supp 2d 378.

In action in which mother asked court to return her children to her in Germany pursuant to Hague Convention on Civil Aspects of International Child Abduction (Convention), Oct. 25, 1980, T.I.A.S. No. 11,670, 1343 U.N.T.S. 49 (reprinted at 51 Fed. Reg. 10494 (Mar. 26, 1986)), and International Child Abduction Remedies Act, 42 USCS § 11601 et seq., which implemented Convention, children were to be returned to Germany where there was little doubt that children became habitual residents of Germany; court reasoned that they lived in Germany for relatively long time--over three years--and they took all of their belongings with them except for few large items and established home and life in Germany, husband worked, mother cared for children, and one child attended school. Koch v Koch (2006, ED Wis) 416 F Supp 2d 645.

### 4. Wrongful removal or retention of child

While child was habitually resident in Germany and father had custody rights under German court order, return of child to Germany was not warranted since removal of child by mother did not violate foreign custody order; order permitted removal for military necessity and military transfer order constituted military necessity regardless of fact that mother requested transfer to avoid foreign jurisdiction. Shealy v Shealy (2002, CA10 Colo) 295 F3d 1117, cert den (2002) 537 US 1048, 154 L Ed 2d 521, 123 S Ct 603.

In case arising under International Child Abduction Remedies Act, 42 USCS § 11601 et seq., and Hague Convention on Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11,670, (reprinted at 19 I.L.M. 1501), district court must determine whether removal of child was "wrongful" under definition set forth in Hague Convention; petitioner bears burden of showing by preponderance of evidence that removal or retention was wrongful; petitioner must show that (1) child was habitually resident in given state at time of removal or retention, (2) removal or retention was in breach of petitioner's custody rights under laws of that state, and (3) petitioner was exercising those rights at time of removal or retention. Shealy v Shealy (2002, CA10 Colo) 295 F3d 1117, cert den (2002) 537 US 1048, 154 L Ed 2d 521, 123 S Ct 603.

Where it was clear that ex-husband retained at least joint custody over parties' child because no competent German court had entered order granting ex-wife sole custody, district court erred in finding that he had no custody rights under Hague Convention on Civil Aspects of Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11,670, 19 I.L.M. 1501, and denying his request for child's return; thus, judgment denying ex-husband relief was vacated and case was remanded to determine if ex-husband was exercising his custody rights and if any defenses applied. Bader v Kramer (2006, CA4 Va) 445 F3d 346.

Father shall pay for return of minor child to Germany with mother under 42 USCS §§ 11603 and 11607, where child was born and resided in Germany from April 1989 to May 1991, then lived in Kansas until April 1992, then returned with mother to Germany, where father visited in July 1992 and took child--without mother's permission--back to U.S., because father wrongfully removed daughter from her "habitual residence" and could not prove that mother acquiesced in his keeping her in U.S., despite some evidence to that effect. Levesque v Levesque (1993, DC Kan) 816 F Supp 662.

  

International Child Abduction Remedies Act, 42 USCS §§ 11601-11610, does not compel return of child to Germany, where German national (father) and American national (mother) were married in and lived in U.S., child was born in U.S., family traveled to Germany for visit, on round-trip tickets, father initially refused to allow mother and child to return to U.S., and then allowed them to return without him, because habitual residence of mother and child was in U.S., they remained in Germany only under duress, and father consented to child's return to U.S., although he later tried to defeat it in custody case. In re Ponath (1993, DC Utah) 829 F Supp 363.

German father is entitled to return to Germany with his 3 minor children, who had been taken to U.S. by estranged wife for "visit" with her parents and kept there when wife had second thoughts about returning to Germany and her husband, because father never consented to permanent removal of children; he petitioned for their return within year; and, prior to removal by their mother, he had been properly exercising joint custody under German law over children who were habitually resident in Germany. Wanninger v Wanninger (1994, DC Mass) 850 F Supp 78.

German mother is denied return of 2-year-old son, where (1) illegitimate son was product of U.S. Army base romance, (2) couple agreed son would return to Massachusetts and live with father's parents while father found job, (3) son had become completely accustomed to life in this country with his father and grandparents after 8 months, but (4) mother wants him to return to Germany now that miscarriage and employment problems have cast shadow on relationship, because it simply defies common sense to suggest under these circumstances that child was "habitual" resident of Germany and wrongfully retained in U.S. under International Child Abduction Remedies Act (42 USCS §§ 11601 et seq.). Falls v Downie (1994, DC Mass) 871 F Supp 100.

Child of deteriorating marriage shall be returned to her state and country of habitual residence, Queensland, Australia, without delay, even though child in less than 5 years has resided in 3 states of U.S. and 2 states of Australia, where it is undisputed that family willingly, but reluctantly, moved to Australia following father's transfer to better his career and allow his family to see world, and that father enjoyed custodial rights as to child and was exercising those rights up until time child was removed to Mississippi by mother, because child was wrongfully removed and retained by mother under international child abduction treaty as implemented by International Child Abduction Remedies Act (42 USCS §§ 11601 et seq.). Walton v Walton (1996, SD Miss) 925 F Supp 453.

Father's petition for return of children to Venezuela is granted under 42 USCS § 11603, where father's efforts to reconcile marriage immediately ceased once he learned his wife had filed for divorce in Florida, and it cannot be said that he acquiesced in moving children to Florida, because Venezuela was children's habitual residence, father was exercising custody rights, and mother wrongfully retained children in U.S. Pesin v Rodriguez (1999, SD Fla) 77 F Supp 2d 1277, app dismd (2001, CA11 Fla) 244 F3d 1250, 14 FLW Fed C 510.

Spanish father's right of access to children now living in Michigan will not be determined, where it is clear his ex-wife did not wrongfully remove children from Spain, because, while federal courts undoubtedly have jurisdiction under International Child Abduction Remedies Act (42 USCS §§ 11601 et seq.) to act in cases where children have been wrongfully removed by ordering their return to their country of habitual residence, access issues, which require court to weigh children's interests, parents' interests, and other familial considerations, are best left to state courts, which have both experience and resources to deal with this special area of law. Teijeiro Fernandez v Yeager (2000, WD Mich) 121 F Supp 2d 1118.

Children of New York doctor and his Greek ex-wife shall be returned to their mother in Greece, where they had established habitual residence over last 5 years with mother and her extended family until doctor, using duplicate passports, wrongfully removed them to New York in violation of custody orders of Greek courts, because judgment of Greek court must be given full faith and credit under 42 USCS § 11603(g). Diorinou v Mezitis (2000, SD NY) 132 F Supp 2d 139, affd, remanded (2001, CA2 NY) 237 F3d 133.

Mother's petition for return of son to Mexico under International Child Abduction Remedies Act, 42 USCS § 11601 et seq., and Hague Convention on Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11,670,

  

1343 U.N.T.S. 49, was denied where facts showed either that son's presence in United States was consensual from time of arrival in United States with mother to date mother left apartment that she shared with son and father, or that mother had acquiesced in son's retention by coming to United States and living there with son for period of five months without any timeline or stated intent to return to Mexico. Bustamente v Serrano-Figueroa (2002, DC Colo) 207 F Supp 2d 1205.

Father's petition for return of his son to Belgium under Hague Convention on Civil Aspects of International Child Abduction, T.I.A.S. No. 11670, 1343 U.N.T.S. 49, was denied where he failed to sustain his burden under 42 USCS § 11603(e)(1)(A) to prove wrongful removal or retention of his son by mother. Delvoye v Lee (2002, DC NJ) 224 F Supp 2d 843, affd (2003, CA3 NJ) 329 F3d 330, cert den (2003) 540 US 967, 157 L Ed 2d 312, 124 S Ct 436.

Where father violated mother's custody rights under French law by removing couple's child from France to Algeria and, later, to United States without mother's consent, mother was allowed to return child to France because (1) one-year limitations period was tolled until mother located child in United States, and in any event father failed to establish that child was "settled" there; and (2) mother's attempts to recover child demonstrated lack of acquiescence to child's removal. Bocquet v Ouzid (2002, SD Fla) 225 F Supp 2d 1337.

Australian father had established prima facie case that he had access to children at time that mother moved them to U.S., through valid custody order issued by family court of Australia, that he had made efforts to exercise those custody rights, and that he had not agreed to his children living permanently in U.S.; thus, matter was referred to family court of Australia so that further custody rulings could be adjudicated. Doudle v Gause (2003, ND Ind) 282 F Supp 2d 922.

Where father cared and provided for his daughter at least to some degree, court concluded that father was exercising his custody rights at time of alleged wrongful retention. Cabrera v Lozano (In re Cabrera) (2004, SD Fla) 323 F Supp 2d 1303, 17 FLW Fed D 866.

Where mother, who was citizen of Northern Ireland, had physical custody of her four children in Northern Ireland and was solely responsible for their care, except for financial assistance from father, and Northern Ireland was children's place of habitual residence, father's retention of children in U.S. when they came to visit him was wrongful. McManus v McManus (2005, DC Mass) 354 F Supp 2d 62.

Respondent father did not "wrongfully detain" his daughter who was visiting him in New York City and was subsequently left in respondent's custody by petitioner mother because petitioner consented to respondent taking custody of child, had made arrangements for child's extended stay in New York, and return of child to petitioner would further goal of Hague Convention to preserve status quo in that respondent did not cross international borders to kidnap his daughter, but petitioner had consented to respondent's retention of child. Choi v Kim (In re Kim) (2005, SD NY) 404 F Supp 2d 495.

Father's removal of his children from Ireland, where he and his children lived for five years after his wife's death, was not wrongful under 42 USCS § 11603(b) where (1) children's mother had granted testamentary guardianship to children's maternal grandparents, but under Irish law, grandparents were required to obtain court order to maintain guardianship in face of father's objections, (2) grandparents never sought court order of guardianship, and (3) grandparents never had custody of children as that term was defined under Irish law because grandparents were not responsible for children's day-to-day care. Hanley v Roy (In re Roy) (2006, SD Fla) 432 F Supp 2d 1297, 19 FLW Fed D 621.

### 5. Exceptions to return requirement

Even when 42 USCS § 11603(e)(2)(A) exception applies, federal court has, and should use when appropriate, discretion to return child to his or her place of habitual residence if return would further aims of Convention. England v England (2000, CA5 Tex) 234 F3d 268, reh, en banc, den (2001, CA5 Tex) 250 F3d 745.

Party opposing return of abducted child to foreign jurisdiction based on exception under Article 13(b) of Hague

  

Convention on Civil Aspects of International Child Abduction bears burden of establishing that exception by clear and convincing evidence. Danaipour v McLarey (2002, CA1 Mass) 286 F3d 1, subsequent app (2004, CA1 Mass) 386 F3d 289, 65 Fed Rules Evid Serv 615.

Return of children to father in Mexico would not deprive them or their maternal grandparents of human rights and international freedoms for exception to requirement of both Hague Convention and 42 USCS § 11603(e)(2)(A) that children be returned to place in which they habitually resided immediately before wrongful removal or retention, absent evidence that Mexican courts were incapable of making fair custody determination between father and grandparents. March v Levine (2000, MD Tenn) 136 F Supp 2d 831, affd, stay vac (2001, CA6 Tenn) 249 F3d 462, 2001 FED App 126P, reh den (2001, CA6) 2001 US App LEXIS 16100, cert den (2002) 534 US 1080, 151 L Ed 2d 695, 122 S Ct 810.

Former wife failed to show by preponderance of evidence that former husband had consented to wife taking children to U.S. to reside permanently when husband had agreed that children could spend limited period abroad. Doudle v Gause (2003, ND Ind) 282 F Supp 2d 922.

Exceptions to general rule of expedient return are to be construed narrowly. Gonzalez Locicero v Nazor Lurashi (2004, DC Puerto Rico) 321 F Supp 2d 295.

Because court found that minor child's father established by preponderance of evidence that he was exercising his rights of custody regarding child at time child's mother removed child from France and retained her in U.S., child's mother did not establish exception to child's return to France set forth in Hague Convention on Civil Aspects of International Child Abduction art 13a, Oct. 25, 1980, T.I.A.S. No. 11,670, 1343 U.N.T.S. 49 (reprinted at 51 Fed. Reg. 10494 (Mar. 26, 1986)), 42 USCS § 11603(e)(2)(B). Dallemagne v Dallemagne (In re D.D.) (2006, MD Fla) 440 F Supp 2d 1283.

Because minor child's father established by preponderance of evidence that he did not consent to removal of his daughter from France or retention of his daughter in U.S., and that he did not acquiesce in either, court concluded that child's father did not consent to removal of child within meaning of Hague Convention on Civil Aspects of International Child Abduction art 13a, Oct. 25, 1980, T.I.A.S. No. 11,670, 1343 U.N.T.S. 49 (reprinted at 51 Fed. Reg. 10494 (Mar. 26, 1986)), 42 USCS § 11603(e)(2)(B). Dallemagne v Dallemagne (In re D.D.) (2006, MD Fla) 440 F Supp 2d 1283.

6. --Child settled in new environment

French husband is denied order returning children to France, even though father met burden of proving that his daughters were wrongfully retained in U.S. by estranged wife after alleged vacation, because mother has shown by preponderance of evidence under 42 USCS § 11603(e)(2)(B) that children are now settled in their new environment, so that custody decision should be made in U.S. Wojcik v Wojcik (1997, ED Mich) 959 F Supp 413.

Father did not establish child's acclimatization to New Zealand under Hague Convention, 42 USCS § 11603, so as to justify removal of child from mother's custody in New York, where child attended school during her 10-month stay in New Zealand and made friends during that time, but she also had attended school in Peru and New York for more than semester, had extended family in U.S., her country of residence changed at least 9 times, before stay in New Zealand she did not reside in any country for uninterrupted period of more than 6 months, and child stated she would like to stay in U.S. Paz v Mejia de Paz (2001, SD NY) 169 F Supp 2d 254, affd (2002, CA2 NY) 47 Fed Appx 22.

Court denied petition to return child to New Zealand where eight-year-old child had been in United States for nearly 22 months at time petition was filed, was doing well in school, had many friends, and participated in extracurricular activities; court also found that child's objections to being returned to New Zealand without her mother were relevant to determining whether child was well settled in her new environment. Anderson v Acree (2002, SD Ohio) 250 F Supp 2d 876.

Judgment was entered in favor of mother in father's action under International Child Abduction Remedies Act

  

(ICARA), 42 USCS §§ 11601-11610; although mother had wrongfully removed parties' child from France, child was now settled in U.S., under Convention on Civil Aspects of International Child Abduction, October 25, 1980, art. 12, as demonstrated by, inter alia, facts that she had spent more than half her life in US in one city, she thrived in school, and had numerous relatives that lived near her, while only tie with France was her father's residence there. Yi Ly v Heu (2003, DC Minn) 294 F Supp 2d 1062.

Where child had, in two and one-half-year period while in U.S., changed schools once and residences approximately five times, mother's uncertain immigration status undermined any stability child could enjoy within U.S. Cabrera v Lozano (In re Cabrera) (2004, SD Fla) 323 F Supp 2d 1303, 17 FLW Fed D 866.

Mother did not prove by preponderance of evidence that her child was settled in her new environment, where undisputed evidence showed, inter alia, that (1) in two and one-half years that mother and child had been in U.S., they lived at least at 3 different residences and child had attended 3 different schools, (2) mother testified that she and child were in U.S. illegally, although mother stated that she had applied for her citizenship, (3) with exception of mother and mother's brother and his family, with whom mother no longer communicated, child had no family in U.S., and (4) mother's husband admitted at evidentiary hearing that he was convicted felon and that he violated Georgia's Family Violence Act in past. Giampaolo v Erneta (2004, ND Ga) 390 F Supp 2d 1269.

7. --Grave risk of harm

Even if risk of psychological harm existed in returning children to their mother, pursuant to 42 USCS § 11603(e)(2)(A), district court erred in failing to consider alternative remedies by means of which children could be transferred back to Canada without risking psychological harm. Von Kennel Gaudin v Remis (2005, CA9 Hawaii) 415 F3d 1028.

Where Belgian father sought return of parties' children under International Child Abduction Remedies Act, 42 USCS § 11601 et seq., and on Civil Aspects of International Child Abduction, mother presented at summary judgment stage sufficient evidence of grave risk of harm to children to necessitate evidentiary hearing, based upon allegations of physical abuse by father and father's mother. Van De Sande v Van De Sande (2005, CA7 Ill) 431 F3d 567.

Even if mother's removal of parties' children from Greece to U.S. was actionable under Hague Convention on Civil Aspects of International Child Abduction, exception under 42 USCS § 11603(e)(2)(A) was applicable, where there was clear and convincing evidence that there was grave risk of physical and psychological harm to children were court to order return of children to Greece in view of evidence of father's physical and emotional abuse of children and that they were settled in State of Washington. Tsarbopoulos v Tsarbopoulos (2001, ED Wash) 176 F Supp 2d 1045.

Former wife failed to show by clear and convincing evidence that children faced grave risk of psychological harm if they were returned to Australia because children would not be placed in imminent danger prior to resolution of custody and there was no showing that former husband was not capable of giving children adequate care and protection; thus, wife's assessment of intolerable situation was not enough to sustain her burden. Doudle v Gause (2003, ND Ind) 282 F Supp 2d 922.

Court was not persuaded that child faced grave risk of physical or psychological harm or would otherwise be placed in intolerable situation if returned to Argentina, where only evidence presented that raises court's brow was mother's testimony that father made threats of harm, which mother supported with police report that she filed against father in November of 2001; however, while court did not dismiss these allegations without giving them due consideration, there was no specific evidence that child faced grave risk of harm. Giampaolo v Erneta (2004, ND Ga) 390 F Supp 2d 1269.

Petitioner's request for repatriation of his children was denied under grave-risk exception to Hague Convention where there was unimpeached and uncontroverted testimony of psychiatrist that mere return of two older children, ages 14 and 12, to Israel would trigger their post-traumatic stress disorders and expose youngest child, age 8, to grave risk given petitioner's pattern of domestic abuse. Elyashiv v Elyashiv (2005, ED NY) 353 F Supp 2d 394.





In case where father, who was U.S. citizen, wrongfully retained his children in U.S. when they visited him from their home in Northern Ireland, father failed to establish existence of "grave risk" of harm by clear and convincing evidence although clinical psychologist with specialty in children and families testified that, based on evidence of mother's drinking problem and her history of striking children, children would likely experience depression, anger, anxiety, shame, and betrayal if returned to Northern Ireland. McManus v McManus (2005, DC Mass) 354 F Supp 2d 62.

Based on all factors in their totality, court was convinced that "grave risk" exception under 42 USCS § 11603 applied to facts of case where record revealed by clear and convincing evidence that there was grave risk that child's return to Canada would have exposed him to physical or psychological harm or otherwise place him in intolerable situation; consequently, child should not have been returned to Canada to await custody hearing, parent's petition for return of her child to Canada under Hague Convention on Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11,670, 1343 U.N.T.S. 49 was denied, and magistrate's report and recommendation that petition be denied was adopted by court. Didur v Viger (2005, DC Kan) 392 F Supp 2d 1268.

Minor child's mother did not show by clear and convincing evidence that conditions in France or in child's grandparents' home came anywhere close to satisfying intolerable exception to child's return to France; absent showing of grave risk of harm to child, mother was unable to rely upon this exception to prevent child's return to France with her father. Dallemagne v Dallemagne (In re D.D.) (2006, MD Fla) 440 F Supp 2d 1283.

### 8. --Maturity of child

Court was not precluded as matter of law from taking into account views of 8-year-old child under maturity exception of 42 USCS § 11603(e)(1), since Convention on Civil Aspects of International Child Abduction (Hague Convention), which is implemented by International Child Abduction Remedies Act, contains no age limit for applying this exception. Raijmakers-Eghaghe v Haro (2001, ED Mich) 131 F Supp 2d 953.

Even though father, who was U.S. citizen, wrongfully retained his children in U.S. when they visited him from their home in Northern Ireland, court nonetheless refused mother's petition for their return because two of children, 14-year-old twins, had attained age and maturity such that their objections to return were honored, and objections to return by other two children, who were ages 13 and 11, and prospect of harm to them if they were returned without their older siblings, were sufficient to deny their return. McManus v McManus (2005, DC Mass) 354 F Supp 2d 62.

At age of six, child had not attained age or degree of maturity to make it appropriate to take her views into account in determining whether she should return to France with her father or stay in U.S. with her mother. Dallemagne v Dallemagne (In re D.D.) (2006, MD Fla) 440 F Supp 2d 1283.

### 9. Jurisdiction

Rights of access do not constitute rights of custody within meaning of Hague Convention, even when coupled with "ne exeat" clause; therefore, district court lacked jurisdiction to order return of child removed in breach of petitioner's access rights rather than custodial rights. Croll v Croll (2000, CA2 NY) 229 F3d 133, cert den (2001) 534 US 949, 151 L Ed 2d 258, 122 S Ct 342 and (criticized in Furnes v Reeves (2004, CA11 Ga) 362 F3d 702, 17 FLW Fed C 285).

Under Hague Convention on Civil Aspects of International Child Abduction, Oct. 25, 1980, art. 16, T.I.A.S. No. 11,670, 1343 U.N.T.S. 49, and 42 USCS § 11603(g) of International Child Abduction Remedies Act, 42 USCS § 11601 et seq., district court erred in staying father's petition for return of children to Germany because of father's decision to file for custody in another state's court, but bring Hague Convention petition in federal court did not mean that father was barred from raising Hague Convention claims in federal court or that father had waived any Hague Convention rights. Holder v Holder (2002, CA9 Wash) 305 F3d 854, 2002 CDOS 8169, 2002 Daily Journal DAR 10304.

In addressing question of whether federal courts were authorized to hear access claims under International Child Abduction Remedies Act, 42 USCS §§ 11601-11610, which implemented Hague Convention on Civil Aspects of

  

International Child Abduction, Oct. 25, 1980, 19 I.L.M. 1501, analysis began, not with 42 USCS § 11603, but with 42 USCS § 11601 that provided that courts could determine rights provided under Convention; under Convention, petitioner mother had no right to initiate judicial proceedings for access claims, and federal courts were not authorized to exercise jurisdiction over them; it was on that premise that appeals court found, as had district court, that courts of U.S. lacked substantive basis for resolution of access claims. Cantor v Cohen (2006, CA4 Md) 442 F3d 196.

As resident of country that has ratified and is "Contracting State" under Hague Convention on International Child Abduction, Convention was applicable to father, so state court did indeed have jurisdiction to implement and apply Convention; thus, state Attorney General's and ex-wife's attorney's motions to dismiss action filed by child's father were granted. Douglas v Ashcroft (2002, DC Colo) 216 F Supp 2d 1207.

Motion to dismiss International Child Abduction Remedies Act (ICARA), 42 USCS §§ 11601 et seq., action brought by father, citizen of Dominican Republic, to regain custody of his children was granted because Dominican Republic and United States had yet to start and/or complete their bilateral negotiations and children were allegedly removed prior to Hague Convention on Civil Aspects of International Child Abduction enactment in Dominican Republic; therefore, court was without jurisdiction under 42 USCS § 11603. Taveras v Taveras (2005, SD Ohio) 397 F Supp 2d 908.

### 10. Abstension

Federal court's abstention from hearing father's petition under International Child Abduction Remedies Act, 42 USCS § 11603(e)(2), based on state court's consideration of father's similar petition in connection with divorce proceeding was appropriate under Colorado River abstention doctrine, where state court had considered and continued to decide issues regarding Act, substantial progress had been made in state-court proceeding, while federal proceeding had just commenced, issues were equally appropriate for either state or federal court, and father appeared to be forum shopping. Cerit v Cerit (In re Cerit) (2002, DC Hawaii) 188 F Supp 2d 1239 (criticized in Hazbun Escaf v Rodriquez (2002, ED Va) 191 F Supp 2d 685).

### 11. Notice and hearing

Since there is no requirement under Hague Convention on Civil Aspects of International Child Abduction or International Child Abduction Remedies Act (42 USCS §§ 11601 et seq.) that discovery be allowed or that evidentiary hearing be conducted, court is given authority to resolve cases brought thereunder without resorting to full trial on merits or plenary evidentiary hearing; consequently, cases brought thereunder are appropriate for resolution by summary judgment. March v Levine (2001, CA6 Tenn) 249 F3d 462, 2001 FED App 126P, reh den (2001, CA6) 2001 US App LEXIS 16100, cert den (2002) 534 US 1080, 151 L Ed 2d 695, 122 S Ct 810.

Federal defendants' alleged conduct in assisting in removal of father's child from country without pre- or post-deprivation process violated 42 USCS § 11603(c). Egervary v Young (2001, ED Pa) 159 F Supp 2d 132, revd, remanded (2004, CA3 Pa) 366 F3d 238, cert den (2005, US) 160 L Ed 2d 769, 125 S Ct 868.

### 12. Fugitive disentitlement doctrine

Fugitive disentitlement doctrine limits access to federal courts by fugitive who has fled criminal conviction in United States and, for purpose of International Child Abduction Remedies Act, it is not relevant to disentitlement issue that wife accompanied her husband to foreign country. Prevot v Prevot (In re Prevot) (1995, CA6 Tenn) 59 F3d 556, 1995 FED App 212P, reh, en banc, den (1995, CA6 Tenn) 1995 US App LEXIS 26055 and cert den (1996) 516 US 1161, 134 L Ed 2d 194, 116 S Ct 1048 and (criticized in Walsh v Walsh (2000, CA1 Mass) 221 F3d 204).

Fugitive disentitlement doctrine does not per se bar petitioner under 42 USCS § 11603. Walsh v Walsh (2000, CA1 Mass) 221 F3d 204, cert den (2001) 531 US 1159, 148 L Ed 2d 982, 121 S Ct 1113 and cert den (2001) 531 US 1159, 148 L Ed 2d 982, 121 S Ct 1113.





### 13. Immunity

Father's case against mother's attorneys, State Department officials, and judge for violation of his due process rights may proceed, even though defendants all merely participated in judicial process, under International Child Abduction Remedies Act (42 USCS §§ 11601 et seq.), that led to removal of allegedly kidnapped child from father's custody and return of child to mother in Hungary, because, inter alia, claim of blanket immunity for individuals involved in judicial proceedings related to child custody disputes is unsupported. Egervary v Rooney (2000, ED Pa) 80 F Supp 2d 491.

### 14. Sufficiency of evidence

District court stated that father was required to prove "beyond reasonable doubt" that children were "habitually resident" in United Kingdom at time of their removal and concluded that father's evidence fell short of showing that; however, father needed only to establish children's habitual residence by preponderance of evidence, therefore case was remanded. Humphrey v Humphrey (2006, CA4 Va) 434 F3d 243.

Father is granted return of his minor daughter pursuant to International Child Abduction Remedies Act (ICARA) (42 USCS §§ 11601 et seq.), where he carried burden of showing that child was wrongfully retained in U.S. by mother who intended to return with child to Poland for school in fall of 1998 but did not, and she could not show that he relinquished his custodial rights, posed risk of harm to child, or that child is "well settled" here in U.S., because father has clear right to return of his child to her habitual residence in Poland under ICARA. Koc v Koc (In re Koc) (2001, ED NY) 181 F Supp 2d 136.

**Unpublished Opinions**

Unpublished: When parties' minor children were habitual residents of Hungary and it was undisputed that former husband was exercising his right to visitation with children on regular basis at time of removal, district court's denial of husband's petition for return of children under Hague Convention and International Child Abduction Remedies Act was remanded to district court for further proceedings because record before court of appeals failed to adequately demonstrate whether husband established wrongful removal or whether his former wife had adequate defense to petition. Katona v Kovacs (2005, CA4 NC) 148 Fed Appx 158.

### 15. Full faith and credit requirement

Word "states" in 42 USCS § 11603(g), which provides for full faith and credit, refers to states of United States. Diorinou v Mezitis (2001, CA2 NY) 237 F3d 133.

Fact that 42 USCS § 11603(g) limits full faith and credit deference to judgments of courts within United States, does not carry negative implication that no deference is to be accorded foreign adjudications. Diorinou v Mezitis (2001, CA2 NY) 237 F3d 133.

As neither mother nor father ever requested any state court to make Hague Convention on Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11,670, 1343 U.N.T.S. 49, or Hague Convention on International Child Abduction Remedies Act (ICARA), 42 USCS §§ 11601-11610, determinations, and as no state court had done so, custody order of state court was not entitled to full faith and credit under 42 USCS § 11603(g); Rooker-Feldman doctrine did not override federal statutory grants of original jurisdiction under ICARA or court's appellate jurisdiction under 28 USCS § 1291. Silverman v Silverman (2003, CA8 Minn) 338 F3d 886, cert den (2004) 540 US 1107, 157 L Ed 2d 893, 124 S Ct 1062.

Federal court was not bound by judgment of state court that awarded custody of children to father where mother had not brought her claim under International Child Abduction Remedies Act (ICARA), 42 USCS § 11601 et seq., before state courts; instead, she chose to exercise her right to seek relief under ICARA in federal court while simultaneously pursuing other remedies in state court. Von Kennel Gaudin v Remis (2005, CA9 Hawaii) 415 F3d 1028.

  

German mother is not entitled to order returning her son to her, where both Utah and German courts entered orders under Hague Convention requiring that son be returned to U.S. and custody of his father, because 42 USCS § 11603(g) requires court to give "full faith and credit" to prior decisions of other courts. Morton v Morton (1997, DC Neb) 982 F Supp 675.

Children of New York doctor and his Greek ex-wife shall be returned to their mother in Greece, where they had established habitual residence over last 5 years with mother and her extended family until doctor, using duplicate passports, wrongfully removed them to New York in violation of custody orders of Greek courts, because judgment of Greek court must be given full faith and credit under 42 USCS § 11603(g). Diorinou v Mezitis (2000, SD NY) 132 F Supp 2d 139, affd, remanded (2001, CA2 NY) 237 F3d 133.

16. Appeal and review

Court of appeals reviews district court's findings of fact for clear error, and reviews de novo its conclusions regarding principles of domestic, foreign and international law. Miller v Miller (2001, CA4 NC) 240 F3d 392.

17. Miscellaneous

British father is entitled to writ of habeas corpus backed by warrant requiring ex-wife to produce their daughter, where ex-wife has evaded misdemeanor warrants in 2 states and remains on lam, because father has satisfied both threshold requirements for petition under Hague Convention and International Child Abduction Remedies Act (42 USCS §§ 11601 et seq.) and applicable law governing notice in interstate child custody proceedings. Brooke v Willis (1995, SD NY) 907 F Supp 57.

In proceeding under Hague Convention and 42 USCS § 11603(a), court would not apply Federal Rules of Civil Procedure but would treat petition as application for writ of habeas corpus, where preliminary review indicated that it was not plainly apparent that petitioner was entitled to no relief, so that court would order respondent to appear before court to show cause why writ should not issue and child should not be returned, respondent would be ordered to produce child, and court would hear evidence and arguments in summary fashion and decide case at hearing unless, for good cause shown, it found reason for delay. Zajaczkowski v Zajaczkowska (1996, DC Md) 932 F Supp 128, affd (1997, CA4 Md) 1997 US App LEXIS 10154.

Because of emphasis of Hague Convention on Civil Aspects of International Child Abduction on speediness, it was not inappropriate to decide case using procedure for summary judgment, instead of holding evidentiary hearing. Menechem v Frydman-Menachem (2003, DC Md) 240 F Supp 2d 437.



