UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

In the Matter of Tehila Chaia Sara Naor and     :
Tomer Naor, infants under the age of 16         :

                                 :

YEHUDA NAOR,                         :     07-CV-3639 (JSR)

                                 :

          Petitioner,             :     Memorandum of Law

                                 :

    v.                               :

                                 :

NANCY ELIZABETH SCHERER,        :

                                 :

         Respondent.         :

------------------------------------------------------------x

JED S. RAKOFF, U.S.D.J.


<u>MEMORANDUM IN SUPPORT OF YEHUDA NAOR'S
PETITION FOR THE RETURN OF HIS CHILDREN TO
ISRAEL UNDER THE HAGUE CONVENTION</u>


David R. Owen (DO-1510)
Hillel Deutsch (HD-9401)
Jasand Mock (JM-1634)
Cahill Gordon & Reindel, LLP
80 Pine Street
New York, New York  10005
(212) 701-3000

Attorneys for Petitioner

# Table of Contents

TABLE OF AUTHORITIES..........................................................................................ii

I.    PRELIMINARY STATEMENT ................................................................................ 1

II.   STATEMENT OF FACTS ........................................................................................ 3

III.  LEGAL STANDARD................................................................................................ 6

IV.   ARGUMENT ............................................................................................................ 7

   A.    Respondent's Retention Of The Children Is Wrongful. ....................................7

     1.    The Children's Habitual Residence Is Israel. ...............................................9

       (a)    The Parents' Latest Shared Intent Was For The Children's
           Habitual Residence To Be Israel.........................................................10

       (b)    The Evidence Does Not Unequivocally Show The Children
           Have Changed Their Habitual Residence. ...........................................13

     2.    Respondent's Retention Of The Children Is A Breach Of Petitioner's
       Custody Rights.............................................................................................14

     3.    Petitioner Was Exercising His Custody Rights At The Time Of
       Removal And Retention Of The Children ...................................................15

   B.    None Of The Affirmative Defenses Of The Convention Are Applicable To
     This Case.........................................................................................................16

     1.    Respondent Bears The Burden Of Establishing An Affirmative Defense....................16

     2.    Petitioner Neither Consented Nor Acquiesced To The Retention Of The
       Children .......................................................................................................17

       (a)    Petitioner Did Not Consent To The Retention Of The
           Children. ..............................................................................................18

       (b)    Petitioner Did Not Acquiesce To The Retention Of The
           Children. ..............................................................................................22

V.    CONCLUSION........................................................................................................ 24

# Table of Authorities

Cases                                                                                          Page

*Armiliato* v. *Zaric-Armiliato*, 169 F. Supp. 2d 230, 239 (S.D.N.Y. 2001) ..................... 13

*Baxter* v. *Baxter*, 423 F.3d 363, 369, 370, 371 (3d Cir. 2005) ...................................... 12, 17, 20, 23

*Blondin* v. *Dubois*, 238 F.3d 153, 162 n.10 (2d Cir. 2001) ........................................... 9 n.2

*Doudle* v. *Gause*, 282 F. Supp. 2d 922, 928-29 (N.D. Ind. 2003) ............................... 21, 21 n.4

*Fredrich* v. *Fredrich*, 78 F.3d 1060, 1063 n.1, 1065, 1066, 1068, 1070 (6th Cir. 1996) ................................................................................................. 14-16, 23, 25 n.5

*Garcia* v. *Angarita*, 440 F. Supp. 2d 1364, 1380 (S.D. Fla. 2006) .............................. 21 n.4

*Gitter* v. *Gitter*, 396 F.3d 124, 130-31, 132, 133, 134, 135 (2d Cir. 2005) .................. 1, 7-11, 13-14

*Gitter* v. *Gitter*, No. 03-CV-3374, 2003 WL 22775375, at *4 (E.D.N.Y. Nov. 20, 2003) ................................................................................................. 10

*In re Kim*, 404 F. Supp. 2d 495, 511-512, 512 n.34, 516 (S.D.N.Y. 2005) .................. 10, 16-18, 23, 25

*In re McKenzie*, 168 F. Supp. 2d 47, 50 (E.D.N.Y. 2001) ........................................... 12

*Mendez Lynch* v. *Mendez Lynch*, 220 F. Supp. 2d 1347, 1361 (M.D. Fla. 2002) ................................................................................................. 24

*Mozes* v. *Mozes*, 239 F.3d 1067, 1075, 1077, 1079 (9th Cir. 2001) ............................ 11-13

*Sumitomo Shoji America, Inc.* v. *Avagliano*, 457 U.S. 176, 184-85 (1982) ................. 9 n.2

*Wanninger* v. *Wanninger*, 850 F. Supp. 78, 82 (D. Mass. 1994) ................................. 21

*Yang* v. *Tsui*, No. 2:03-CV-1613, 2006 WL 2466095, at *8-9 (W.D. Pa. Aug. 25, 2006) ................................................................................................. 12

<u>Statutes</u>                                                                                          <u>Page</u>

International Child Abduction Remedies Act

42 U.S.C. § 11601 et seq. (2000), as amended ............................................... 1
§ 11601(a)(4) ................................................................................ 16
§ 11603 ........................................................................................ 3 n.1
§ 11603(e)(2) ............................................................................... 17
§ 11605 ........................................................................................ 3 n.1

<u>Other Authorities</u>                                                                                <u>Page</u>

Capacity and Guardianship Law of Israel, 5722-1962, 16 LSI 120 (1961-62)
    (Isr.)........................................................................................... 14
Convention on the Civil Aspects of International Child Abduction, Oct. 25,
    1980, 19 I.L.M., 1501 ................................................................. passim
Explanatory Report, Hague Conference on Private International Law, <u>in</u> Actes
    et documents de law Quatorziem session, vol. III, 1980, p.426, 447 ¶ 71 ............. 9 n.2
Exec. Order No. 12648, 53 Fed. Reg. 30637 (Aug. 11, 1988), <u>reprinted in</u>, 42
    U.S.C. § 11606 (2005) ................................................................. 9 n.2
United States Department of State, <u>Hague International Child Abduction</u>
    <u>Convention; Text and Legal Analysis</u>, 51 Fed. Reg. 10494 (Mar. 26, 1986).......... 9 n.2

## I.    Preliminary Statement

The Petitioner, Yehuda Naor, filed his Petition for Return of Children to Israel Under the Hague Convention (the "Petition") with this Court on May 8, 2007, seeking an order directing his wife, the Respondent, Nancy Elizabeth Scherer, to show cause why their children Tehila and Tomer Naor (the "Children") should not be returned to Israel forthwith.  At the May 16, 2007 appearance on the Order to Show Cause, this Court scheduled an evidentiary hearing for June 5, 2007 and welcomed, but did not require, simultaneous submissions from the Parties. Pursuant to the agreement of counsel to exchange submissions on May 31, 2007, this Memorandum of Law is Petitioner's submission in support of his request that this Court order the return of the Children to Israel forthwith pursuant to the Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, 19 I.L.M. 1501 [hereinafter "Convention"], and the International Child Abduction Remedies Act, 42 U.S.C. § 11601 *et seq.* [hereinafter "ICARA"].  The expeditious return of the Children is appropriate because Respondent has been wrongfully retaining the Children in the United States since at least September of 2006.

The Convention provides that children wrongfully removed or retained from their habitual residences shall be returned forthwith.  Convention, Art. 12.  In the Second Circuit, "in order to prevail on a claim under the Hague Convention a petitioner must show that (1) the child was habitually resident in one State and has been removed to or retained in a different State; (2) the removal or retention was in breach of the petitioner's custody rights under the law of the State of habitual residence; and (3) the petitioner was exercising those rights at the time of the removal or retention."  Gitter v. Gitter, 396 F.3d 124, 130-31 (2d Cir. 2005).  As demonstrated in detail below, the Children are habitual residents of Israel and have been wrongfully retained in

1

the United States since at least September 2006. The ongoing retention of the Children is in breach of the Petitioner's *de jure* custody rights under Israeli law. At all times, Petitioner has been exercising his custody rights over the Children under Israeli law. Therefore, unless Respondent can demonstrate that one of the affirmative defenses enumerated in the Convention applies, Petitioner is entitled to the return of the Children to Israel forthwith.

At the appearance before this Court on May 16, 2007, Respondent's counsel asserted the existence of an "oral agreement" to her retention of the Children in the United States through August 9, 2007. Petitioner denies the existence of any such agreement, and instead points to the return flight booked for Respondent and the Children for September 20, 2006 that went unused. Respondent has herself undermined any factual basis for the alleged oral agreement by (1) representing to the U.S. State Department that she does not intend to return at all, and (2) filing custody papers in Israel seeking to keep the Children in the U.S. until June 2008.

Having raised this affirmative defense, it is Respondent's burden to show that Petitioner either consented *ex ante* to the retention of the Children or that he subsequently acquiesced to their retention. Even if it were presumed to exist, an agreement for a temporary visit does not rise to the level of permission to indefinitely or permanently retain the Children that is necessary to consent as that term is used in the Convention. Moreover, the evidence shows that no such agreement ever existed. To the contrary, the Petitioner has consistently asserted his rights to the return of the Children to Israel once he became concerned that Respondent would not return on the September 20 flight. Thus, Respondent cannot establish either consent or acquiescence as an affirmative defense.

As the Petition states and as this Memorandum of Law will show, Respondent's unilateral decision not to return the Children to Israel created a wrongful retention of the Children in the United States and none of the affirmative defenses of the Convention apply. Accordingly, the Children should be returned to Israel forthwith.

## II.    Statement of Facts

Tehila Chaia Sara Naor and Tomer Naor are the children of Yehuda Naor and his wife, Nancy Elizabeth Scherer (together with the Petitioner the "Parents").[1] Tehila was born in Israel on May 7, 2003 and is now four years old; Tomer was born in Israel on February 7, 2006 and is now one year old. From the time they were born until May 23, 2006, the Children lived with their Parents at the family's home in Netanya, Israel, a resort city on the Mediterranean

---

[1] Most of the facts discussed herein are believed to be undisputed. Although Petitioner will testify to the facts discussed herein, citations to relevant documents are provided and the documents are attached to the Affidavit of Hillel Deutsch, dated May 31, 2007 submitted herewith ("Deutsch Aff."). Under 42 U.S.C. § 11605, documents included with an application to the court pertaining to a Hague Petition require no authentication. ("With respect to any application to the United States Central Authority, or any petition to a court under section 4 [42 U.S.C. § 11603], which seeks relief under the Convention, or any other documents or information included with such application or petition or provided after such submission which relates to the application or petition, as the case may be, no authentication of such application, petition, document, or information shall be required in order for the application, petition, document, or information to be admissible in court.") Furthermore, the rules of admissibility of evidence, and documents in particular, are relaxed in Hague Petition cases. See, e.g., Article 23 of the Convention ("No legalization or similar formality may be required in the context of this Convention"); Article 30 ("Any application submitted . . . to the judicial or administrative authorities of a Contracting State in accordance with the terms of this Convention, together with documents and any other information appended thereto or provided by a Central Authority, shall be admissible in the courts or administrative authorities of the Contracting States.").

coast where Petitioner works as a software engineer and the Respondent is a teacher at the Walworth Barbour American International School ("AIS"). While living with her family in Netanya, Tehila attended *gan*, the equivalent of preschool, and the Children saw their father on a daily basis. However, since September of 2006, Respondent has deprived Petitioner of his rights to the custody of the Children by wrongfully retaining them in the United States.

On May 23, 2006, the Children left Israel with Respondent for a temporary visit to the United States on the conditional consent of the Petitioner. The prior December, Respondent had applied to AIS for a sabbatical year "to work towards the completion of the dissertation component of [her] doctoral thesis at New York University." (Deutsch Aff. Ex. 1 at 1) That application states in part:

> Since I will be returning to AIS after my sabbatical year, and have intentions of remaining a member of the staff through 2010, the time given to implement the plan, I feel that this work will benefit me in my professional career as a teacher, staff member, educator, as well as an individual.

(Deutsch Aff. Ex. 1 at 3) Before Respondent left for New York, the Parents agreed that she could bring the Children with her for the summer, but that she and the Children would return to Israel in September 2006, at which time the Parents would decide whether the Respondent would return to New York again thereafter, and, if so, where the Children would reside during that visit. Accordingly, in May 2006, the Parents purchased round trip tickets for Respondent and the Children from Israel to New York with a return to Israel on September 21, 2006. (Petition Ex. H) However, Respondent did not return with the Children in September 2006 as planned.

Upon their arrival in New York, Respondent and the Children took up residence with Respondent's parents in Mount Vernon. Shortly thereafter, Respondent determined not to return to Israel with the Children, and informed Petitioner of her decision during a telephone conversation. Petitioner thereupon contacted the Israeli Central Authority to ascertain how he might secure the return of the Children (see Deutsch Aff. Ex. 2), but, after further reassurances from the Respondent that she would return in September 2006, Petitioner did not file a formal request for the return of the Children at that time. Instead, Petitioner traveled to the United States in late August 2006 to visit the Children and to persuade Respondent to return in September as she had agreed to do before leaving Israel, or, if she would not return, to permit the Children to return with him. Respondent would not permit the Children to return with Petitioner and did not return the Children herself on September 21, 2006 with the tickets she had purchased together with the Petitioner.

When the Respondent did not return the Children to Israel in September 2006, Petitioner again contacted the Israeli Central Authority and filed a formal application for the return of the Children to Israel under the Hague Convention. The Israeli Ministry of Justice completed the Request Pursuant to the Hague Convention on the Civil Aspects of International Child Abduction on January 23, 2007 (Petition Ex. E), and the undersigned counsel were contacted by the National Center for Missing & Exploited Children on April 11, 2007. Over the course of the Children's ongoing retention in the United States, Petitioner made repeated efforts to amicably secure their return by Respondent. At various times Respondent encouraged Petitioner's belief that an amicable resolution was possible by indicating generally that she would be willing to re-

5

turn with the Children. None of Petitioner's efforts has been able to achieve that result however. With no other options, Petitioner filed his Petition with this Court on May 8, 2007.

Since filing, two developments have cast additional doubt on Respondent's representation that she intends to return on August 9, 2007 by a purported previous agreement. First, the U.S. State Department's National Center for Missing and Exploited Children reported their understanding that Respondent will not voluntarily return the children to Israel on August 9 or otherwise. Second, subsequent to the issuance of the Order to Show Cause, Respondent filed an action in an Israeli court seeking custody of the Children through June 2008. (Deutsch Aff. Ex. 3) Respondent's Israeli custody proceeding only underscores that Respondent's claim before this Court of an "oral agreement" is indefensible.

Throughout their ongoing retention in the United States, Petitioner has maintained frequent telephone contact with the Children, calling to speak with them every few days. In addition to his trip to the United States in August of 2006, Petitioner also traveled to New York to visit the Children in January 2007. That trip was the last time Petitioner has seen his four year old daughter or his fifteen month old son.

## III.    Legal Standard

Article 12 of the Convention provides in part:

Where a child has been wrongfully removed or retained in terms of Article 3 and, at the date of the commencement of the proceedings before the judicial or administrative authority of the Contracting State where the child is, a period of less than one year has elapsed from the date of the wrongful removal or retention, the authority concerned shall order the return of the child forthwith.

6

Article 3 of the Convention provides:

> The removal or retention of a child is to be considered wrongful where -
>
> (a) it is in breach of the rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and
>
> (b) at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.
>
> The rights of custody mentioned in sub-paragraph (a) above, may arise in particular by operation of law or by reason of a judicial or administrative decision, or by reason of an agreement having legal effect under the law of that State.

Thus, in the Second Circuit:

> [I]n order to prevail on a claim under the Hague Convention a petitioner must show that (1) the child was habitually resident in one State and has been removed to or retained in a different State; (2) the removal or retention was in breach of the petitioner's custody rights under the law of the State of habitual residence; and (3) the petitioner was exercising those rights at the time of the removal or retention. The petitioner must establish these requirements by a preponderance of the evidence.

Gitter v. Gitter, 396 F.3d 124, 130-31 (2d Cir. 2005).


**IV.    Argument**

    A.    Respondent's Retention Of The Children Is Wrongful.

        It is not disputed that the Children's habitual residence is in Israel or that the Petitioner has rights of custody to the Children.  Indeed, Respondent's sole argument at the hearing before this Court on May 16, 2007 was that she retained the Children for a limited period of time with the Petitioner's consent.  As stated in the Petition and as demonstrated below, the evidence is clear that (1) the Children's habitual residence is in Israel and that they have been retained in

the United States, (2) that this retention is in breach of the Petitioner's custody rights under the law of Israel, (3) and that the Petitioner was exercising those rights at the time of the retention.

After a year of visits, late night telephone calls, and other efforts to secure her return with the Children, Respondent's recent contention that she will return to Israel with the Children on August 9, 2007 is cold comfort to Petitioner. Indeed, Petitioner only learned after filing the Petition that Respondent's attorney had previously informed the U.S. State Department's National Center for Missing and Exploited Children in March of this year that Respondent will not voluntarily return the Children to Israel. Also subsequent to the service of the Order to Show Cause in this Case, Respondent filed a custody action in an Israeli court. (See Deutsch Aff. Ex. 3) Respondent's contradictory representations suggest that she has manipulated Petitioner throughout and is unilaterally exploiting an extraterritorial advantage at the expense of Petitioner's right to be with his children.

The claim of an "oral agreement" in this case, if credited, would only advance Respondent's actual contention that yet another of her unilaterally conceived arrangements should then be substituted in its place. (See Deutsch Aff. Ex. 3 (excerpt of Respondent's Israel court filing requesting custody of the Children in the United States through June 2008)) It would prolong the Children's stay in the United States over Petitioner's objection and improve Respondent's position in the likely custody dispute in Israel. As the Second Circuit stated in Gitter, 396 F.3d at 134, the "object of the Convention is to dissuade parents and guardians from engaging in gamesmanship with a child's upbringing in order to secure an advantage in an anticipated cus-

8

tody battle."[2] This Court should fulfill that objective by ordering the return of the Children

forthwith.

      1.    The Children's Habitual Residence Is Israel.

      The Second Circuit has held:

> [I]n determining a child's habitual residence, a court should apply the following standard: First, the court should inquire into the shared intent of those entitled to fix the child's residence (usually the parents) at the latest time that their intent was shared. In making this determination the court should look, as always in deter-

---

[2]    The United States Department of State, the Central Authority charged with the administration of the Convention, see, Exec. Order No. 12648, 53 Fed. Reg. 30637 (Aug. 11, 1988), reprinted in 42 U.S.C. § 11606, has provided legal analysis stating in part:

> Now, from the Convention's standpoint, the removal of a child by one of the joint holders without the consent of the other, is wrongful, and this wrongfulness derives in this particular case, not from some action in breach of a particular law, but from the fact that such action has disregarded the rights of the other parent which are also protected by law, and has interfered with their normal exercise. The Convention's true nature is revealed most clearly in these situations: it is not concerned with establishing the person to whom custody of the child will belong at some point in the future, nor with the situations in which it may prove necessary to modify a decision awarding joint custody on the basis of facts which have subsequently changed. It seeks, more simply, to prevent a later decision on the matter being influenced by a change of circumstances brought about through unilateral action by one of the parties.

U.S. Department of State, Hague International Child Abduction Convention; Text and Legal Analysis, 51 Fed. Reg. 10494, 10506 (Mar. 26, 1986) (citing Elisa Perez-Vera, Explanatory Report, Hague Conference on Private International Law, in Actes et documents de law Quatorziem session, vol. III, 1980, p.426, 427 ¶ 71, 1980, p. 426, 447 ¶ 71). "Although not conclusive, the meaning attributed to treaty provisions by the Government agencies charged with their negotiation and enforcement is entitled to great weight." Sumitomo Shoji America, Inc. v. Avagliano, 457 U.S. 176, 184-85 (1982); quoted in Blondin v. Dubois, 238 F.3d 153, 162 n.10 (2d Cir. 2001).

mining intent, at actions as well as declarations.  Normally the shared intent of the
parents should control the habitual residence of the child.  Second, the court
should inquire whether the evidence unequivocally points to the conclusion that
the child has acclimatized to the new location and thus has acquired a new habit-
ual residence, notwithstanding any conflict with the parents' latest shared intent.

Gitter v. Gitter, 396 F.3d 124, 134 (2d Cir. 2005).

(a)    The Parents' Latest Shared Intent Was For The
Children's Habitual Residence To Be Israel.

Courts in the Second Circuit "will presume that a child's habitual residence is

consistent with the intentions of those entitled to fix the child's residence at the time those inten-

tions were mutually shared."  Gitter, 396 F.3d at 133; see also In re Kim, 404 F. Supp. 2d 495,

512 (S.D.N.Y. 2005) ("In focusing on the pre-retention period, the relevant inquiry is the shared

intention of those responsible for fixing the child's place of residence, which typically will be the

child's parents." (citing Gitter, 396 F.3d at 132)).  In Gitter, the Second Circuit left undisturbed

the District Court's determination that a move from the United States to Israel lacked shared mu-

tual intent to change the child's habitual residence when the mother believed that the move was

conditional on her satisfaction with Israel.  396 F.3d at 135; see also Gitter v. Gitter, No. 03-CV-

3374, 2003 WL 22775375, at *4 (E.D.N.Y. Nov. 20, 2003) ("Although Eden was living in Israel

from March 2001 until February 2002 and again from February to June 2002, I find that his par-

ents only mutually agreed to move to Israel on a conditional basis - namely, that Mrs. Gitter

would be satisfied with the new arrangements....  Being unable to find settled mutual intent to

make Israel Eden's permanent home, I conclude that Mr. Gitter failed to meet his burden of es-

tablishing, by a preponderance of the evidence, that Eden's habitual residence ever shifted to Is-

rael.").

10

At the time that Respondent removed the Children from Israel in May of 2006, it was the mutual understanding of the Parties that the Children would return in September of 2006. (See Petition Ex. H)  It is abundantly evident from the Petitioner's Declaration in this case, (Petition Ex. F) and his actions following the retention of the Children in September 2006 that he never consented to the permanent or indefinite relocation of the Children to the United States. Thus, the last *shared* intent of the Parents was that Israel would be the habitual residence of the Children.  Moreover, Respondent herself did not intend to abandon her habitual residence in Israel.  Indeed, Respondent's sabbatical application stated that she intended to return *and remain* in Israel at least through 2010, (see Deutsch Aff. Ex. 1 at 3) negating any inference that she intended to abandon her habitual residence in Israel.  See Gitter, 396 F.3d at 132 ("generally speaking, 'the first step towards acquiring a new habitual residence is forming a settled intention to abandon the one left behind.'" (quoting Mozes v. Mozes, 239 F.3d 1067, 1075 (9th Cir. 2001) (Kozinski, J.) (reversing and remanding lower court's determination that there had been a change in habitual residence for further consideration of the shared intent of the parents))).

Even if this Court determines that Petitioner initially consented to the relocation of the Children to the United States for the continuing studies of Respondent, that relocation was still for a limited period of time, at which point the Children were to return to Israel.  A consent to a temporary relocation does not demonstrate a shared intent to change the habitual residence of the Children.  See Mozes, 239 F.3d at 1077 ("On the other side are cases where the child's initial translocation from an established habitual residence was clearly intended to be of a specific, delimited period.  In these cases, courts have generally refused to find that the changed in-

11

tentions of one parent led to an alteration in the child's habitual residence."). Likewise, even if

this Court concludes the exact date of return was subject to negotiation, it remains the case that

there was never a settled intent to abandon the habitual residence in Israel and therefore no intent

to change the Children's habitual residence to the United States. See Id. ("Other times, however,

circumstances are such that, even though the exact length of the stay was left open to negotiation,

the court is able to find no settled mutual intent from which such abandonment can be in-

ferred.").

      Courts looking at these issues have determined that the removal of a child on a

temporary or trial basis does not establish a mutual intent to change the habitual residence of the

child.  In Baxter v. Baxter, 423 F.3d 363, 369 (3d Cir. 2005), the Third Circuit held that where

the relocation of the mother and child was viewed by the parties at the time "in the first instance

as an opportunity to escape from the disagreeable circumstances of Bathurst Island, to visit fam-

ily, and to buy time to plan their next move," the relocation "falls short of the 'settled purpose'

required under the Convention for a finding that the country of habitual residence has been aban-

doned."  District courts have reached similar conclusions. See, e.g., Yang v. Tsui, No. 2:03-CV-

1613, 2006 WL 2466095, at*8-9 (W.D. Pa Aug. 25, 2006) (holding that where the child left Can-

ada to reside with the respondent during petitioner's hospitalization and recovery, "the shared

intent of the parents was not for [the child] to make Pittsburgh her home, unless [petitioner]

passed away.  Accordingly, the Court finds that Canada was [the child's] habitual residence.");

In re McKenzie, 168 F. Supp. 2d 47, 50 (E.D.N.Y. 2001) (holding that despite a nine month resi-

dence in the United States with both parents, a four year-old's habitual residence remained in

12

Germany).  Moreover, Respondent's unilateral decision not to return and her personal desire to

remain in New York are not sufficient to change the Children's habitual residence.  Armiliato v.

Zaric-Armiliato, 169 F. Supp. 2d 230, 239 (S.D.N.Y. 2001) ("Ms. Zaric-Armiliato's personal

desire to establish a permanent home in New York as her marriage unraveled is not sufficient to

establish [the child's] habitual residence here.") (holding that the habitual residence of the child

was in Italy and ordering the return of the child to Italy pursuant to father's Hague petition).

> (b)    The Evidence Does Not Unequivocally Show That The
>         Children Have Changed Their Habitual Residence.

In addition to considering the Parent's latest shared intent, the Second Circuit held

in Gitter that courts "must consider whether, notwithstanding the intent of those entitled to fix

the child's habitual residence, the evidence points *unequivocally* to the conclusion that the child

has become acclimatized to his new surroundings and that his habitual residence has conse-

quently shifted." 396 F.3d at 133 (emphasis added).  However, adopting the language of the

Ninth Circuit's decision in Mozes, 239 F.3d at 1079, the Second Circuit further stated "courts

should be 'slow to infer' that the child's acclimatization trumps the parents' shared intent." Git-

ter, 396 F.3d at 134.  One reason for caution expressly described by the court is the danger that

"[p]ermitting evidence of acclimatization to trump evidence of earlier parental agreement could

'open children to harmful manipulation when one parent seeks to foster residential attachments

during what was intended to be a temporary visit.'" Id. (quoting Mozes, 239 F.3d at 1079).

In Gitter, the child had moved to Israel with both his parents and had lived there

with them for all but a few weeks of a fifteen month period between March 2001 and June 2002.

By contrast, the Children in this action are being wrongfully retained by Respondent apart from

Petitioner.  As the Sixth Circuit stated in <u>Fredrich</u> v. <u>Fredrich</u>, 78 F.3d 1060, 1068 (6th Cir.

1996), "A removing parent must not be allowed to abduct a child and then — when brought to

court — complain that the child has grown used to the surroundings to which they were ab-

ducted."  Moreover, the court in <u>Gitter</u> described the appropriate circumstances for finding ha-

bitual residence contrary to shared parental intent as follows:

> In relatively rare circumstances, however, it is possible that the child's acclimati-
> zation to the location abroad will be so complete that serious harm to the child can
> be expected to result from compelling his return to the family's intended resi-
> dence. As noted earlier, a child who has spent fifteen years abroad, for example,
> would predictably suffer severe harm if returned to the state he had experienced
> only at birth. In such circumstances the likelihood that the child would be harmed
> from the deprivation of his acclimatized life in the new residence might overcome
> the showing that the parents' last shared intent was to return to the original domi-
> cile. The child's acclimatization might thus "point unequivocally" to a change in
> his habitual residence.

<u>Gitter</u>, 396 F.3d at 134.  Far from the fifteen years abroad in the <u>Gitter</u> hypothetical, the Chil-

dren's absence from Israel in this Case is within the Convention's one year requirement of return

and there is no indication that the Children will suffer any harm if returned.

     2.    Respondent's Retention Of The Children Is A
                Breach Of Petitioner's Custody Rights.

     The Petitioner has rights of custody under Israeli law.  The Capacity and Guardi-

anship Law of Israel, 5722-1962, 16 LSI 120 (1961-62) (Isr.) (Petition Ex. D), provides:

| | |
|---|---|
| Status of parents. | 14. Parents shall be the natural guardians of their minor children |
| Function of parents. | 15. The guardianship of the parents shall include the duty and the right to take care of the needs of the minor, including his education, studies, vocational and occupational training and work, and to preserve, manage and develop his property; it shall also include the right to the custody of the minor, to determine his place of residence and the authority to act on his behalf. |

The retention of Tehila and Tomer in the United States breaches Petitioner's right to the custody of the Children, his right to determine their place of residence, and his right to take care of the Children's needs, including their education and studies.[3]

3.    Petitioner Was Exercising His Custody Rights At The Time Of Removal And Retention Of The Children

At the time of the removal of the Children, they lived with Petitioner and Respondent as a family at their home in Netanya, Israel. As the father, under Israeli law, Petitioner has *de jure* custody rights. See supra Part IV(A)(2). The Sixth Circuit has held that, "if a person has valid custody rights to a child under the law of the country of the child's habitual residence, that person cannot fail to 'exercise' those custody rights under the Hague Convention short of acts that constitute clear and unequivocal abandonment of the child." Fredrich, 78 F.3d at 1066.

Throughout the retention of the Children, Petitioner has sought to exercise his custodial rights. He has visited the Children twice in the United States; first at the end of August 2006, and again in January 2007. He has also been in frequent telephone contact with the Children, calling to speak with them every few days. Petitioner has been exercising custody rights

---

[3]    See Request Pursuant to the Hague Convention on the Civil Aspects of International Child Abduction, Petition Ex. E at 5 ("The parties are married and were living together with the children at the time that the mother took the children to the United States. Pursuant to sections 14 and 15 of Israel's Capacity and Guardianship Law 1962, parents are the joint guardians of their minor children, which includes the right to custody and to determine the child's place of residence. Therefore, the father has custodial rights under Israeli Law.") (Signed by Gal Levertov, Director, Department of International Affairs, Office of the State Attorney on behalf of the Central Authority for the State of Israel).

under Israel law; to the extent that it might be argued he has not been exercising such rights since

the Children's removal from Israel, he would have been exercising such rights but for the reten-

tion of the Children.  See Fredrich, 78 F.3d at 1065 ("The only acceptable solution, in the ab-

sence of a ruling from a court in the country of habitual residence, is to liberally find 'exercise'

whenever a parent with *de jure* custody rights keeps, or seeks to keep, any sort of regular contact

with his or her child.").

> B.   None Of The Affirmative Defenses
>      Of The Convention Are Applicable
>      To This Case
>
> 1.   Respondent Bears The Burden Of Establishing An
>      Affirmative Defense

Once a petitioner establishes a *prima facie* case of wrongful retention:

> the child must be returned to his or her state of habitual residence unless the re-
> spondent can establish one of the following affirmative defenses: (1) the pro-
> ceeding was commenced more than one year after the removal of the child and the
> child has become settled in his or her new environment; (2) the person seeking re-
> turn of the child consented to or subsequently acquiesced in the removal or reten-
> tion; (3) there is a grave risk that the return of the child would expose it to physi-
> cal or psychological harm; or (4) the return of the child would not be permitted
> under the fundamental principles of the requested State relating to the protection
> of human rights and fundamental freedoms.

In re Kim, 404 F. Supp. 2d 495, 511-12 (S.D.N.Y. 2005); see also Convention, Arts. 12 & 13.

These affirmative defenses are to be narrowly construed, In re Kim, 404 F. Supp. 2d at 512 ("as

is clear from ICARA, these affirmative defenses are meant to be narrow"); see also 42 U.S.C. §

11601(a)(4) (Congressional Findings) ("Children who are wrongfully removed or retained within

the meaning of the Convention are to be promptly returned unless one of the narrow exceptions

set forth in the Convention applies."), and Respondent bears the burden to prove either of the

first two by a preponderance of the evidence or either of the last two by clear and convincing

evidence. See 42 U.S.C. § 11603(e)(2); In re Kim, 404 F. Supp. 2d at 512 n.34.

    2.    Petitioner Neither Consented Nor Acquiesced To
            The Retention Of The Children

      With regard to the affirmative defense of consent or acquiescence, "the words

'removal or retention' refer to whichever may be relevant to the case at hand, and create a multi-

ple, not alternative obligation.  In other words, the use of the word 'or' in article 13(a) of the

Convention is not disjunctive in the sense of indicating an alternative between mutually exclu-

sive things." Baxter v. Baxter, 423 F.3d 363, 370 (3d Cir. 2005).  Accordingly, consent and ac-

quiescence are treated as separate inquiries. See In re Kim, 404 F. Supp. 2d at 516 ("'The con-

sent defense involves the petitioner's conduct prior to the contested removal or retention, while

acquiescence addresses whether the petitioner subsequently agreed to or accepted the removal or

retention.'" (quoting Baxter, 423 F.3d at 371)); see also Baxter, 423 F.3d at 371 ("If the peti-

tioner agrees to a removal under certain conditions or circumstances and contends those condi-

tions have been breached, the court must also examine any wrongful retention.").  Thus, though a

parent may agree to the initial removal of the child under certain conditions, that consent does

not end the inquiry of whether the retention of the child exceeds the scope of the consent.

      Respondent has claimed that Petitioner agreed to her retention of the Children

through August 9, 2007; however, Respondent has not fixed the date on which she claims this

alleged agreement was made.  If Respondent claims the agreement was made prior to her re-

moval of the Children from Israel in May of 2006, then the proper inquiry is whether Petitioner

consented *ex ante* to the indefinite or permanent retention of the Children; if Respondent claims

17

that the agreement was reached after she removed the Children to the United States, the question before this Court is whether Respondent acquiesced in the subsequent retention of the Children. See In re Kim, 404 F. Supp. 2d at 516. Regardless of which argument Respondent chooses to make, she cannot prevail; the agreement she claims to have received is legally insufficient. It is also without factual support. Respondent therefore cannot show consent or meet the stringent standard for proving acquiescence.

(a)     Petitioner Did Not Consent To The Retention Of
The Children.

In In re Kim, 404 F. Supp. 2d at 516, the S.D.N.Y. stated:

> The key to the consent inquiry is the petitioner's *subjective intent*, including the nature and scope of the alleged consent. For example, it is often the case that a parent consents to the removal of a child to a foreign location for a temporary visit, but not to a longer or even indefinite stay in that country.... Accordingly, to make out a consent defense, Respondent must establish by a preponderance of the evidence that Petitioner had the 'subjective intent' to permit Respondent to remove *and* retain the child for *an indefinite or permanent time period.*

(emphasis added) (internal citations omitted) (holding that petitioner had subjective intent to permit respondent to retain child permanently where there was no apparent time limit to the consent).

(i)     The Agreement Claimed By Respondent Is Legally Inoperative.

Respondent claims that Petitioner agreed to her retention of the Children from May 2006 to August 2007. Assuming *arguendo* that such an agreement existed, at most it demonstrates that the Parties agreed to a temporary visit of fixed duration. Even Respondent's claim of agreement fails to establish that Petitioner permitted her to retain the Children "for an indefi-

nite or permanent time period" and is thus unable, as a matter of law, to prove the affirmative

defense of consent.

      (ii)    Petitioner Never Agreed To Respondent's Re-
               tention Of The Children Through August 9,
               2007.

        Petitioner did not consent to the retention of the Children past September 20,

2006. As evidenced by the round trip itinerary (Petition Ex. H), the Children were to return to

Israel on September 21, 2006. When Respondent removed the Children from Israel, it was the

Petitioner's understanding that they would return before the holiday of Rosh Hashanah on Sep-

tember 22, 2006, at which time the Parties would reevaluate whether the Respondent needed to

continue her studies in New York. Respondent's unilateral decision not to return to Israel as

planned cannot transform Petitioner's agreement to a summer visit into consent for a year-long

relocation of his Children. Even if a second trip after September had been contemplated at any

time prior to the failure to use the return flights, Respondent's failure to come home for the holi-

days as planned exceeded any consent by Petitioner. Petitioner's numerous communications

with the relevant authorities during this time make this abundantly clear. (See Deutsch Aff.

Ex.2; Petition Ex. E.)

        Moreover, there is further reason to doubt the veracity of Respondent's purported

agreement. While the Respondent has represented to this Court that she and the Petitioner had

an oral agreement whereby she could retain the Children until August 9, 2007, the U.S. State

Department's National Center for Missing and Exploited Children (the "National Center") re-

ports a very different representation by the Respondent. According to the National Center, on or

around March 13, 2007, Respondent's attorney spoke with the National Center's International

Case Specialist Ebbony Jackson and claimed that Respondent and Petitioner did not discuss a

return date to Israel. Respondent's representations to the National Center directly contradict her

claim that she and the Petitioner reached an agreement that she would return to Israel with the

Children on August 9, 2007.

> (iii)  Respondent's Wrongful Retention Of The Chil-
> dren Exceeds The Scope Of Petitioner's Con-
> sent.

Respondent's refusal to return in September 2006 exceeded the scope of any con-

sent by Petitioner. The Third Circuit has stated, "Article 13(a) does not provide that if a parent

consents to removal of the child for a period, under certain conditions or circumstances, that re-

tention of the child beyond those conditions or circumstances is necessarily permissible" Baxter,

423 F.3d at 370 (holding that father's consent to the indefinite, but temporary relocation of his

child from Australia to the United States did not constitute consent for retention of the child once

the mother decided to end the marriage and remain the United States). As the Baxter court indi-

cated:

> In examining a consent defense, it is important to consider what the petitioner ac-
> tually contemplated and agreed to in allowing the child to travel outside its home
> country. The nature and scope of the petitioner's consent, and any conditions or
> limitations, should be taken into account. The fact that a petitioner initially al-
> lows children to travel, and knows their location and how to contact them, does
> not necessarily constitute consent to removal or retention under the Convention.

Baxter, 423 F.3d at 371.

Whatever time in the United States Petitioner may be found to have consented to,

such consent was conditioned on the return of the Children in September 2006. Respondent's

unilateral decision not to return with the Children at that time exceeded the scope of Petitioner's

consent and precludes her affirmative defense. See Doudle v. Gause, 282 F. Supp. 2d 922, 928-

29 (N.D. Ind. 2003) ("[E]ven if the Respondent intended to remove the children for a maximum

of one year, her actions since 2000 have exceeded the scope of Petitioner's consent and she is

wrongfully retaining the children in the U.S.") (holding that there was no consent for removal or

retention where the father's agreement to children accompanying mother on six-to-twelve month

working holiday was conditioned upon mother's promise to return with the children at the expi-

ration of twelve months and she did not do so); Wanninger v. Wanninger, 850 F. Supp. 78, 82

(D. Mass. 1994) ("even accepting [respondent's] position that [petitioner] consented to her tak-

ing the children to the United States for a limited period, it does not follow that [petitioner] ac-

quiesced to the children's permanent retention in the United States once he realized the marriage

was irreconcilable") (holding that there was no consent or acquiescence to the retention of the

children). [4] By refusing to return to Israel with the Children at the appointed time, Respondent

---

[4]    To the extent that Respondent intended at the time of removal to permanently retain the
Children in the United States, she perpetrated a fraud on the Petitioner by promising that
she and the Children would return to Israel and Petitioner's consent to the removal is
therefore without legal effect. See Garcia v. Angarita, 440 F. Supp. 2d 1364, 1380 (S.D.
Fla. 2006) ("Petitioner's agreement to allow the children to travel to the United States for
a brief visit does not constitute consent to their relocation here. The evidence of the de-
ception Respondent perpetrated on Petitioner regarding the children's departure, as well
as Petitioner's testimony and the actions he took to secure their return under the Hague
Convention overwhelmingly supports the finding that he did not consent to their perma-
nent residence in the United States.") (granting petition returning children where father
consented to 15-20 day visit to United States when in fact mother had intended to perma-
nently change residence); Doudle, 282 F. Supp. 2d at 929 ("Under Petitioner's version of
the facts, it appears that Respondent engaged in fraud to obtain his consent (telling him

Footnote continued on next page.

21

violated the conditions and limitations of Petitioner's consent; having disregarded the conditions

of his consent, Respondent should not now be heard to argue that this vitiated consent precludes

Petitioner's right to insist on the return of the Children to their home in Israel.

The Petitioner did not consent to the retention of his Children in the United States

past September 20, 2006. As shown by the return flight itinerary (Petition Ex. H), the Parties

intended for the Children to return to Israel on September 21, 2006. Respondent's ongoing re-

tention of the Children after that date exceeded the scope of Petitioner's consent. Indeed, even if

this Court finds that the Petitioner consented to retention of the Children through August 2007,

Respondent's failure to return in September 2006 breached a vital condition of this consent.

Moreover, even if Respondent's claim that the Parties agreed to her retention of the Children for

the duration of May 2006 though August 2007 is credited, this agreement does not meet the legal

standard of consent to an "indefinite or permanent" retention required to establish the affirmative

defense. Thus, as a matter of law, Respondent cannot prove the affirmative defense of consent.

      (b)    Petitioner Did Not Acquiesce To The Retention Of
              The Children.

Petitioner has not acquiesced to the retention of his Children in the United States.

To establish the affirmative defense of acquiescence, the Respondent must show that at some

point *after* the contested retention of his Children, the Petitioner agreed to or accepted their re-

---

Footnote continued from previous page.

> that their absence from Australia was for a limited time only, when in fact their departure
> was intended to be permanent). This fraud would vitiate Petitioner's consent.").

22

tention in the United States. <u>See</u> <u>In re Kim</u>, 404 F. Supp. 2d 495, 516 (S.D.N.Y. 2005) ("'The

consent defense involves the petitioner's conduct prior to the contested removal or retention,

while acquiescence addresses whether the petitioner subsequently agreed to or accepted the re-

moval or retention.'" (quoting <u>Baxter</u>, 423 F.3d at 371)). In <u>Friedrich</u> v. <u>Friedrich</u>, 78 F.3d 1060,

1070 (6th Cir. 1996), the Sixth Circuit held that "acquiescence under the Convention requires ei-

ther: an act or statement with the requisite formality, such as testimony in a judicial proceeding;

a convincing written renunciation of rights; or a consistent attitude of acquiescence over a sig-

nificant period of time." (internal footnotes omitted).

       This stringent standard for acquiescence has also been adopted in the Third Cir-

cuit, <u>Baxter</u> v. <u>Baxter</u>, 423 F.3d 363, 371 (3d Cir. 2005), and endorsed in the Southern District of

New York. <u>In re Kim</u>, 404 F. Supp. 2d at 516 (noting that <u>Friedrich</u> "only relates to the defense

of acquiescence, which is 'analytically distinct' from the consent defense" and stating "while the

'consent and acquiescence inquiries are similar,' consent 'need not be expressed with the same

degree of formality as acquiescence in order to prove the defense under article 13(a)'" (quoting

<u>Baxter</u>, 423 F.3d at 371)). Petitioner has never agreed to or accepted the retention of his Chil-

dren in the United States past September 2006, let alone with the formality required by the rele-

vant law. Therefore, Respondent cannot establish acquiescence as an affirmative defense to her

wrongful retention of the Children.

       Far from renouncing his rights or adopting a consistent attitude of acquiescence

over a significant period of time, Petitioner has repeatedly asserted his rights and sought to re-

main in contact with his children. He has visited the Children twice in the United States; first at

the end of August 2006, and again in January 2007. When he learned that Respondent might not return in September 2006 as planned, he contacted the Israeli Central Authority to ascertain what he might do to secure the return of the Children. When Respondent in fact failed to return with the Children, Petitioner again contacted the Israeli Central Authority and filed an application under the Hague Convention. Finally, when it became evident that Respondent would not voluntarily return the Children to Israel, Petitioner filed his Petition with this Court.

Petitioner's intervening efforts to amicably secure the return of the Children are encouraged by the Hague convention and should not be mistaken for acquiescence. Mendez Lynch v. Mendez Lynch, 220 F. Supp. 2d 1347, 1361 (M.D. Fla. 2002) ("The Hague Convention encourages the parties to engage in informal discussions prior to initiation of formal proceedings, and that was done by Petitioner in this case. Respondent's argument to the contrary confuses acquiescence with negotiation and attempted reconciliation.") (granting petition for the return of children to Argentina). Petitioner's timely, consistent, and repeated efforts to secure the return of the Children negate any argument that he acquiesced to their retention in the United States.

## V.    Conclusion

Petitioner has established by a preponderance of the evidence that (1) the Children were habitually resident in Israel and have been retained in the United States; (2) the retention is in breach of the Petitioner's custody rights under the law of Israel; and (3) the Petitioner was exercising those rights at the time of the retention. Accordingly, the retention is wrongful and the Children must be returned to Israel forthwith unless the Respondent establishes consent or acquiescence to the retention as an affirmative defense. See In re Kim, 404 F. Supp. 2d at 511-12. As

24

a matter of both law and fact Respondent cannot establish either defense. The agreement she

claims to have reached with Petitioner permitting her to retain the Children until August 2007 is

an agreement for a clearly delineated temporary visit to the United States and therefore is legally

insufficient to establish consent under the Convention. Even were this not so, the evidence dem-

onstrates that Petitioner neither consented nor acquiesced to any retention of the Children past

September 2006.[5]

<div style="margin-left:40%;">

Respectfully submitted,

By _____

David R. Owen (DO-1510)
Hillel Deutsch (HD-9401)
Jasand Mock (JM-1634)
Cahill Gordon & Reindel, LLP
80 Pine Street
New York, New York 10005
(212) 701-3000

Attorneys for Petitioner
YEHUDA NAOR

</div>

Dated: 5/31/07

---

[5]    In Fredrich v. Fredrich, 78 F.3d 1060, 1063 n.1 (6th Cir 1996), the court noted, "[s]taying the return of a child in an action under the Convention should hardly be a matter of course. The aim of the Convention is to secure prompt return of the child to the correct jurisdiction, and any unnecessary delay renders the subsequent return more difficult for the child, and subsequent adjudication more difficult for the foreign court."